DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas which granted summary judgment in favor of defendant-appellee, St. Paul Fire Marine Insurance Company ("St. Paul"), and thereby determined that plaintiffs-appellants Amy S. Chamberlin et al. were not covered by the uninsured/ underinsured motorist ("UM/UIM") provisions of a policy of insurance issued by St. Paul.
 {¶ 2} Amy Chamberlin was involved in an automobile accident in February 1996. On January 21, 1997, Amy Chamberlin, her husband Daniel Chamberlin, and their three minor children, filed a complaint against four defendants: Jeff Williams, alleged to have caused the accident; Pricilla Webert, the owner of the car being driven by Williams at the time of the accident; State Farm, the Chamberlins' automobile insurance carrier; and Anthem Blue Cross and Blue Shield, the Chamberlins' medical insurance carrier. The Chamberlins included in their complaint a claim against State Farm for UM/UIM coverage.
 {¶ 3} On January 7, 1998, the trial court signed a dismissal entry dismissing the Chamberlins' complaint against defendants Williams and Webert after the Chamberlins advised the court that they had settled their differences with those defendants. The Chamberlins settled their claims against the tortfeasor after receiving permission from State Farm to accept an offer of $100,000 from Williams' insurance carrier. State Farm also authorized the release of Williams from any subrogation liability.
 {¶ 4} On June 23, 1999, the Supreme Court of Ohio decided the case of Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. In Scott-Pontzer, the decedent was killed by the negligence of another driver while operating a vehicle owned by his wife. Id. at 660-661. Pontzer was employed by Superior Dairy, although he was not acting within the course and scope of his employment at the time of his death. Superior Dairy maintained a commercial auto policy and excess/umbrella policy. Id. at 661. The commercial policy's declarations page listed only the corporation as the named insured. Reviewing the policy language, the Supreme Court of Ohio concluded that the policy could be interpreted to include company employees. Id. at 664. The court reasoned that because a corporation can only act through live persons, it would be "nonsensical" to limit coverage to the corporate entity. Id. Subsequently, in Ezawav. Yasuda Fire Marine Ins. Co. (1999), 86 Ohio St.3d 557, the Supreme Court of Ohio applied Scott-Pontzer to family members of employees.
 {¶ 5} On July 5, 2000, the Chamberlins filed their second amended complaint adding St. Paul as a party defendant. The Chamberlins alleged that they had settled their claims against Williams by accepting settlement offers equal to Williams' policy limits, that the settlement exhausted the coverage provided by Williams' policy and that State Farm had consented to the settlement. The Chamberlins then alleged that they were entitled to UM/UIM coverage under a policy of insurance issued by St. Paul because their damages exceeded the limits of Williams' insurance coverage. In answering the second amended complaint, St. Paul admitted that it issued a policy of insurance to Telamon Construction, Inc., Daniel Chamberlin's employer, and an umbrella policy to WMOG, Inc., under which Telamon is an insured. St. Paul further admitted that pursuant toScott-Pontzer, Amy Chamberlin qualified as an insured under the policy issued to Telamon. St. Paul, however, denied that the Chamberlins were entitled to UM/UIM coverage under those policies because the Chamberlins failed to comply with the terms of the policies regarding timely notice of the accident and protection of St. Paul's rights of subrogation as to the tortfeasor.
 {¶ 6} Both St. Paul and State Farm filed motions for summary judgment. St. Paul's motion asserted that appellants were not entitled to UM/UIM coverage under the St. Paul policies because after the settlement appellants were no longer "legally entitled" to recover damages from the tortfeasors, appellants destroyed St. Paul's subrogation rights through the settlement and appellants breached the notice provisions of the St. Paul policies to the prejudice of St. Paul. In its motion for summary judgment, State Farm asserted that the coverage provided under the St. Paul policies was primary and that State Farm was therefore entitled to reimbursement for all or a portion of the money it had paid in settlement to appellants.
 {¶ 7} On February 6, 2002, the trial court filed a judgment entry granting St. Paul's motion for summary judgment and dismissing State Farm's summary judgment motion as moot. The court first concluded that pursuant to the express terms of the St. Paul policy issued to Telamon, only Daniel Chamberlin would be insured under the contract. The court further concluded, however, that because appellants failed to comply with the provisions of the insurance contract covering notice and protection of St. Paul's subrogation rights, UM/UIM coverage under the policy was precluded. From that judgment, appellants raise the following assignments of error:
"ASSIGNMENT OF ERROR NO. 1:
 {¶ 8} "The trial court erred in granting summary judgment, because the appellee did not yet possess subrogation rights when the appellants settled claims against the tortfeasor.
"ASSIGNMENT OF ERROR NO. 2:
 {¶ 9} "The trial court erred in granting summary judgment, because protection of an insurer's subrogation rights are [sic] not a condition precedent to uninsured/underinsured coverage provided as a matter of law.
"ASSIGNMENT OF ERROR NO. 3:
 {¶ 10} "The trial court erred in granting summary judgment, because the appellants gave the appellee reasonable notice of their claim, under all of the circumstances."
 {¶ 11} In addition, cross-appellant State Farm has raised one assignment of error:
 {¶ 12} "The trial court erred in denying (actually declining to address) State Farm Mutual Automobile Insurance Company's and State Farm Fire and Casualty Company's motion for summary judgment."
 {¶ 13} In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 14} Additional facts relevant to the issues raised on appeal are as follows. At the time of Amy Chamberlin's accident, Telamon Construction was the named insured under policy number KK03400020 issued by St. Paul. In addition Telamon was an additional named insured under an umbrella policy, number KK03400018, issued to WMOG, Inc. The umbrella policy only provided UM/UIM coverage where such coverage was provided under the primary policy issued to Telamon Construction. Accordingly, we only need address the assignments of error as they relate to the primary policy issued to Telamon Construction. In addition, the parties agreed in the proceedings below that the total damages sustained by Amy Chamberlin as a result of the accident were $432,000. The liability limits under the St. Paul policy issued to Telamon Construction, Inc. were $1,000,000.
 {¶ 15} The primary policy issued to Telamon Construction, Inc. includes UM/UIM coverage in pertinent part as follows. Under the heading "What This Agreement Covers" the policy reads:
 {¶ 16} "We'll pay compensatory damages you and other persons protected under this agreement are legally entitled to collect from the owner or driver of an uninsured or underinsured vehicle if the damages result from an accident that causes bodily injury to a protected person or property damage.
 {¶ 17} "However, we'll only pay these damages when the owner's or driver's liability results from owning, maintaining or using the uninsured or underinsured vehicle.
 {¶ 18} "Our payment for damages will begin only:
 {¶ 19} ".after all other liability policies and bonds are used up by judgments or settlements; or
 {¶ 20} ".if a tentative settlement has been made between a protected person and the insurer of an underinsured vehicle. In that case, we must be given prompt written notice of the settlement. Then, we must pay the protected person the amount of the settlement within 30 days."
 {¶ 21} The UM/UIM provision of the primary policy also provides under the heading "What To Do If You Have A Loss:"
 {¶ 22} "In the case of a settlement between a protected person and an insurer of an underinsured vehicle, the protected person must promptly notify us in writing of the settlement. Then we must be allowed 30 days to pay the amount of the settlement to the protected person. This will preserve our right of recovery."
 {¶ 23} Finally, the UM/UIM provision of the primary policy identifies who is protected by the policy as follows:
 {¶ 24} "Individual. You are protected. Also, if you are named in the Introduction as an individual, you and your family members are protected persons."
 {¶ 25} Although there is no provision in the policy titled "Introduction," the first page of the policy is titled "RENEWAL CERTIFICATE" and defines "you, your and yours" as meaning Telamon Construction, Inc. It does not identify any individual.
 {¶ 26} Appellants' three assignments of error are interrelated and therefore will be discussed together. Appellants assert that because underinsured motorist coverage was provided to them as a matter of law pursuant to Scott-Pontzer, the notice and subrogation provisions of the policy do not apply. That is, only those terms required by R.C. 3937.18
become part of the coverage. They further assert that because St. Paul did not possess subrogation rights when appellants settled their claims against the tortfeasor (because the settlement occurred prior toScott-Pontzer's release), it would be inequitable to enforce the subrogation provisions of the insurance policy.
 {¶ 27} The notice and subrogation provisions in the policy at issue are known as preconditions to coverage. In Bogan v. ProgressiveCas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus, modified on other grounds in McDonald v. Republic-Franklin Ins. Co.
(1989), 45 Ohio St.3d 27[1], the Supreme Court of Ohio held that a subrogation clause in an insurance policy providing UM/UIM coverage is "a valid and enforceable precondition to the duty to provide underinsured motorist coverage." In Luckenbill v. Midwestern Indemn. Co. (2001),143 Ohio App.3d 501, 505, the Second District Court of Appeals explained the importance of notice and subrogation provisions in insurance contracts: "Notice provisions provide the insurer an opportunity to investigate the accident and determine if the claim is covered by the policy. * * * Notice provisions also allow the insurer to `control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims.' [Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000),88 Ohio St.3d 292,] 302-303. * * * In addition, notice allows an insurer time to evaluate the merits of a claim in order to defend against fraudulent, invalid, or excessive claims. Id. Notice requirements apply to UM/UIM coverage as well as to coverage for an insured's own liability. * * * Late notice is not fatal to an insured's claim if the insurer cannot demonstrate prejudice. * * * However, if an insured destroys an insurer's right to subrogation by releasing the tortfeasor, the insurer is prejudiced." (Citations omitted.)
 {¶ 28} Notice and subrogation clauses are valid and enforceable preconditions to an insurer's duty to provide underinsured motorist coverage even where UM/UIM coverage arises as a matter of law. This is the conclusion that we reached in Green v. The Cincinnati Ins. Co.
(Dec. 7, 2001), Huron App. No. H-01-018, and that has been reached by other appellate districts in this state. See, Wodrich v. Federal Ins.Co., 2nd Dist. No. 02CA3, 2002-Ohio-5122; Heiney v. The Hartford, 10th Dist. No. 01AP-1100, 2002-Ohio-3718. Accordingly, the fact that UM/UIM coverage arises by operation of law does not relieve the insured of his or her obligation under the contract to comply with the notice and subrogation provisions. Luckenbill, supra at 507, Wodrich, supra at ¶ 9.
 {¶ 29} In the present case, it is undisputed that appellants did not notify St. Paul of the accident or of their claim against Williams until October 1999, approximately two years after they settled their claim with Williams. Appellants clearly breached their obligation under the St. Paul policy and therefore were not entitled to UIM benefits.
 {¶ 30} Appellants further assert that because Scott-Pontzer was not decided until June 23, 1999, approximately two years after they settled their claim against Williams, they could not reasonably have known that they had a claim for UIM benefits under the St. Paul policy. They contend that because they notified St. Paul of their claim within 120 days of the Scott-Pontzer decision, their notice of their claim was reasonable under the circumstances.This argument was considered and rejected by the Tenth District Court of Appeals in Heiney, supra at ¶ 54, where the court stated: "Nothing prevented appellant from investigating any insurance coverages his employer had, promptly notifying appellee of the accident and preserving appellee's subrogation rights. In all probability, appellant is correct in his supposition that appellee would have denied appellant coverage. Nevertheless, just as the appellant in Scott-Pontzer did, appellant could have litigated the matter. Awaiting a favorable Supreme Court decision is not a reasonable excuse for appellant's delay and failure to preserve appellee's subrogation rights." We find this rationale to be appropriate and applicable to this issue, particularly given that "* * * the Supreme Court in Scott-Pontzer, supra, did not create new law. Instead, it merely interpreted the language of an already existing contract of insurance applying the rules of construction." Achauer v. Monroe Guaranty Ins. Co.
(June 6, 2001), Muskingum App. No. CT2000-0038. Other appellate courts in Ohio have reached the same conclusion. See Lintner v. The MidwesternIndemn. Co., 12th Dist. No. CA2002-04-077, 2002-Ohio-5609; Gidley v.Cincinnati Ins. Co. (April 17, 2002), Summit App. No. 20813.
 {¶ 31} The undisputed facts in this case reveal that appellants failed to comply with the notice and subrogation preconditions of the St. Paul policy and, as such, they were not entitled to UIM benefits. Accordingly, the trial court did not err in granting St. Paul summary judgment and appellants' three assignments of error are not well-taken. In that State Farm's claim for reimbursement could only arise if appellants were entitled to UIM benefits, the trial court further did not err in finding State Farm's motion for summary judgment moot. State Farm's sole assignment of error is therefore not well-taken.
 {¶ 32} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Sandusky County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants and cross-appellants equally.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] The modification addressed the situation where an insured gave his underinsurance carrier notice of a tentative settlement prior to release and the carrier failed to protect its own subrogation rights by paying the UIM benefits before the release. That is not the situation in the present case.